STATE OF NEBRASKA, APPELLEE, V. CATARINO GONZALES, JR., APPELLANT.

352 N.W.2d 571

Filed July 20, 1984.   No. 83-831.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant was convicted, after jury trial, of the crime of burglary and sentenced, after determination that he was a habitual criminal, to 10 to 12 years in the Nebraska Penal and Correctional Complex. He appeals, assigning seven errors. Those assignments may be summarized as error by the court (1) in failing to suppress defendant's confession and certain physical evidence seized pursuant to a search warrant; (2) in failing to dismiss the case because of insufficient evidence; (3) in the court's instructions to the jury, in that the court refused to instruct on criminal trespass as a lesser-included offense of burglary; and (4) in determining defendant to be a habitual criminal.

With regard to defendant's confession the evidence shows that defendant was arrested at 5:15 p.m. on June 1, 1983, in connection with a burglary that had occurred at the Don Reichert home in Scottsbluff, Nebraska, on April 15, 1983. Defendant was kept in jail, and at 9:20 a.m. the next morning he was informed of his *Miranda* rights. The interview between defendant and a Scottsbluff police officer was taped in its entirety, and the tape was introduced in evidence at the hearing on defendant's motion to suppress before the trial judge and, in an edited form, before the jury (deleting, by agreement with defendant's counsel, all mention of another crime allegedly committed by defendant). Defendant signed a *Miranda* rights form in two places, indicating that each of his rights had been read to him, that he understood those rights, and that he was willing to waive those rights and give a statement.

Defendant contends that the statement is not admissible be-

cause (1) it was not freely and voluntarily given; (2) there was no intelligent and knowing waiver of his constitutional rights; and (3) the statement was obtained as a result of an illegal arrest.

With regard to the first two points, defendant presents no facts in support of his contentions sufficient to overcome the admitted facts set out above. In *State v. Hunt*, 212 Neb. 214, 217, 322 N.W.2d 621, 623 (1982), this court stated:

> It is the law in Nebraska that in order for a confession to be admissible, it must have been freely and voluntarily given and must not have been obtained by threat or promise. *State v. Hunsberger*, 211 Neb. 667, 319 N.W.2d 757 (1982); *State v. McDonald*, 195 Neb. 625, 240 N.W.2d 8 (1976). It is also the law that the admission into evidence of a confession constitutes an independent determination by the trial court that the confession was voluntarily made. Such determination will not be set aside on appeal unless such finding is "clearly erroneous." *State v. Hunsberger, supra; State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979).

In this case the determination of the trial court that the statement was admissible is not only not "clearly erroneous" but is supported by overwhelming evidence. The form of the submission of the issue to the jury is not challenged, and the issue of voluntariness was also found against defendant by the jury.

The contention that the confession was the result of an illegal arrest is based on defendant's claim that the arrest warrant was based on information obtained from his accomplice, Cathy Cushing, who was not a reliable witness. The fact that the underlying information was obtained from a person allegedly involved in the same crime does not invalidate the arrest warrant. That argument was rejected in *State v. Lytle*, 194 Neb. 353, 360, 231 N.W.2d 681, 686 (1975), where this court stated:

> Actually, probable cause did exist. It is undisputed that defendant was arrested somewhere around 1:30 a.m., on December 28, 1973. Between 5 p.m. on December 27, 1973, and 1:30 a.m. on December 28, 1973, police officers had interviewed Joseph Harris and had taken a statement from him regarding his involvement, along with the defendant, in the purse snatching on October 28, 1973. It

was this statement of Harris, implicating the defendant, which gave the officers probable cause to arrest the defendant. This statement provided reasonably trustworthy information which would warrant a man of reasonable caution in the belief that defendant was involved in the commission of the crime. The officers could reasonably believe the information was trustworthy because it came from a statement which implicated the maker as well as the defendant.

Defendant further argues that the affidavit supporting the request for an arrest warrant shows that the accomplice agreed to disclose the facts about the burglary in question only after obtaining a promise that no charges would be filed against her for the burglary. Such a fact should be considered by the issuing magistrate in the decision as to whether there is sufficient verified information to warrant the issuance of the warrant, whether for a search or, as in this case, for an arrest. The fact of the accomplice's bargain was before the magistrate, along with the other information. As this court held with regard to a search warrant in *State v. Gilreath*, 215 Neb. 466, 469, 339 N.W.2d 288, 291 (1983):

> [A]n issuing magistrate is required only to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

In this case the magistrate's decision was practical and based on common sense, given all the facts, and the trial court was correct in determining that the magistrate had a substantial basis for concluding that probable cause existed for the arrest of the defendant. Defendant's confession was properly admitted before the jury.

Once it is established the defendant's confession was properly admitted, there is no real basis for defendant's contention that the evidence was insufficient to support his conviction. The

evidence was undisputed that a break-in occurred at the Don Reichert home and that items of value were removed from the home. Defendant's girl friend, with whom he was living, testified, in detail, how she and defendant entered the home. Defendant's statement corroborated her testimony. Defendant did not testify during the trial, but would have us hold that because his girl friend was the one who initiated the burglary plan and because, in his statement, defendant denied that he intended to steal anything from the home, this court should hold as a matter of law that defendant was not guilty of burglary. The argument does not warrant a response. The evidence was sufficient to support defendant's conviction.

Defendant next contends the physical evidence seized pursuant to a search warrant should have been suppressed. The search warrant was based on an affidavit which appears to be identical with the affidavit described generally above with regard to the arrest. For the reasons stated above, the search warrant was also valid and the motion to suppress physical evidence seized under the search warrant was properly denied.

Defendant next asserts that criminal trespass, in violation of Neb. Rev. Stat. § 28-520(1) (Reissue 1979), is a lesser-included offense of burglary, as defined in Neb. Rev. Stat. § 28-507(1) (Reissue 1979), and that defendant was entitled to an instruction permitting the jury to acquit defendant of burglary and find him guilty of criminal trespass. Defendant, in his brief, "recognizes that this court, in State v. Miller, 215 Neb. 145, [337] N.W.2d [424] (1983), ruled that criminal trespass was not a lesser-included offense to the charge of burglary," but urges us to overrule Miller. We decline to do so.

Defendant's last contention is that his prior convictions used to support the habitual criminal count were not constitutionally sound. At the hearing to determine defendant's status as a habitual criminal, the State introduced evidence of defendant's pleas of guilty to each of two counts of burglary alleged to have been committed on January 8, 1973, at different locations in the city of Scottsbluff, and evidence of defendant's plea of guilty to a charge that on or about April 12, 1975, also in Scottsbluff, defendant had failed to appear before the court after being released on bond on a burglary charge, different

from the two charges just referred to. (Defendant apparently was also convicted and sentenced on this additional burglary charge, but this burglary conviction is not relied on by the State on the habitual criminal charge.)

Each of the transcripts of the earlier convictions showed, on the face of the transcript, that defendant had counsel at the time of his plea. The State has, therefore, proved the earlier convictions *prima facie*, and without any further evidence has complied with the requirements of *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 65 L. Ed. 2d 169 (1980). The proceedings in the habitual criminal proceeding to this point would support a finding of the trial court that defendant was a habitual criminal. That was not the end of the proceedings in this case, however.

Defendant then introduced the verbatim transcript of the arraignment at each of the earlier two pleas relied on by the State, and the trial court considered that additional evidence. This was an appropriate procedure. As set out in *State v. McGhee*, 184 Neb. 352, 358, 167 N.W.2d 765, 769 (1969):

> Such cases as Burgett v. Texas, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319, indicate quite clearly that in a habitual criminal proceeding a prior conviction is subject to attack on constitutional grounds, but that case implicitly recognizes that the attack must be made initially in the trial court, not on appeal.

In *State v. Smith*, 213 Neb. 446, 449, 329 N.W.2d 564, 566 (1983), we said:

> We agree that in an enhancement proceeding, a defendant should not be able to relitigate the former conviction, and to that extent such conviction cannot be collaterally attacked. However, under the present circumstances, the burden remains with the State to prove the prior convictions. This cannot be done by proving a judgment which would have been invalid to support a sentence of imprisonment in the first instance. . . . A defendant's objection to the introduction of a transcript of conviction which fails to show on its face that counsel was afforded or the right waived does not constitute a collateral attack on the former judgment.

See, also, *State v. Cole*, 207 Neb. 318, 320, 298 N.W.2d 776, 778 (1980): "We have consistently held that the validity of a prior conviction offered to enhance punishment under the habitual criminal statute must be challenged at the habitual criminal hearing." In this habitual criminal hearing, defendant had raised the constitutional invalidity of two of his prior convictions, and we hold he may raise these issues in this manner.

The transcript of the arraignments at the time defendant pled guilty to the two burglary counts in 1973, as offered by defendant, was received in evidence, as was the transcript of the arraignment in 1975 when defendant pled guilty to the charge of failure to appear. The arraignments on the charges were all similar, in that defendant appeared with counsel, that defendant was advised that the charges were felonies and told the penalty in each case, and that defendant was advised he had a right to trial by jury. In all the arraignments the court, by further questioning directed to the defendant, determined that the pleas were voluntary and that there was a factual basis for each of the pleas.

The record does not show in any of the arraignments that defendant was advised of each and all of the constitutional rights set out in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981). For example, specific mention was not made of defendant's privilege against self-incrimination nor of his right to confront the witnesses against him.

Insofar as defendant relies on *Boykin v. Alabama, supra*, this court's position was clearly set out in *State v. Turner*, 186 Neb. 424, 425, 183 N.W.2d 763, 765 (1971), where we stated:

If we understand defendant's argument, in his reliance on Boykin, as well as on McCarthy v. United States, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418, which deals with Rule 11 of the Federal Rules of Criminal Procedure, it is his contention that the trial court must direct a defendant's attention to each and every constitutional right and then obtain a separate expressed verbal waiver of each of them before it can find an intelligent and voluntary waiver. This requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too

extreme construction of those cases.

We hold in this case, as in *Turner, supra,* that there was substantial compliance with the ABA Standards Relating to Pleas of Guilty and that the convictions based on defendant's pleas of guilty in earlier cases were properly considered by the trial court in determining whether defendant was a habitual criminal within the intendment of Neb. Rev. Stat. § 29-2221 (Reissue 1979).

While the arraignments above referred to do not strictly comply with the requirements in *State v. Tweedy, supra,* that case was decided on August 7, 1981, and, by its own terms, was not to be applied to cases decided before that date. As to this case, the law of *State v. Turner, supra,* applies, and, as stated above, the arraignments and resulting pleas relied on by the State do fully comply with *State v. Turner, supra.*

If the habitual criminal statute is held to be properly applicable to defendant in this case, his claim that this sentence of 10 to 12 years is excessive is frivolous.

The judgment and sentence are affirmed.

AFFIRMED.

BOSLAUGH, J., concurring.

I concur in the judgment of the court. I disagree with the dicta which permits a defendant to collaterally attack a prior judgment in an enhancement proceeding.

In *State v. Smith,* 213 Neb. 446, 449, 329 N.W.2d 564, 566 (1983), we said: "We agree that in an enhancement proceeding, a defendant should not be able to relitigate the former conviction, and to that extent such conviction cannot be collaterally attacked." In the *Smith* case we held that a transcript of a conviction which does not show on its face that counsel was afforded or the right waived cannot be used as proof of the prior conviction in accordance with the rule set forth in *Baldasar v. Illinois,* 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980). *Baldasar* requires only that a prior conviction be shown to have been a counseled one. In the present case the dicta in the majority opinion exceeds the scope of the holding in *Baldasar* and permits a defendant to collaterally attack a former conviction on other grounds.

This permits a defendant to relitigate the former conviction

by raising issues which should be raised only upon direct appeal or in a proceeding to set aside the judgment filed in the court where the prior judgment originated. This result places a great burden on the State in proving earlier convictions, particularly when the challenged conviction was rendered in a distant county or in another jurisdiction and witnesses have died, moved away, or otherwise have become unavailable.

HASTINGS and CAPORALE, JJ., join in this concurrence.