STATE OF NEBRASKA, APPELLEE, V. LEE WICKLINE, APPELLANT.
440 N.W.2d 249

Filed May 26, 1989.     Nos. 88-687, 88-688.

Thomas P. Herzog for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is a consolidated appeal taken from the Holt County District Court, where defendant, Lee Wickline, was charged by information on April 19, 1988, with burglary, in violation of Neb. Rev. Stat. § 28-507(1) (Reissue 1985). On May 3, 1988, the defendant filed motions to suppress pretrial and courtroom identification and to suppress certain physical evidence. These motions were denied in journal entries filed May 16 and 20, 1988.

On May 17, 1988, a second information was filed, charging the defendant with the additional crime of theft, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 1985), and with being a habitual criminal, in violation of Neb. Rev. Stat. § 29-2221(1) (Reissue 1985).

The two informations were consolidated for trial and tried before a jury. On June 7, 1988, the jury returned verdicts finding the defendant guilty of theft by unlawful taking, and burglary.

The court overruled defendant's motion for a new trial and, on June 22, 1988, determined, after a hearing, that the

defendant was not a habitual criminal. On that same day the defendant was sentenced to the Nebraska Department of Correctional Services on the theft and burglary charges for a term of 6 to 10 years on each count, with the sentences to be served concurrently.

The defendant timely appealed to this court and assigns as errors the actions of the district court (1) in denying defendant's motion to suppress as evidence certain cigarette butts and a screwdriver, (2) in finding that the showup identification of the defendant was not prejudicial to the defendant's rights, and (3) in determining that the jury verdicts were supported by sufficient evidence. We affirm.

The record shows the following. At approximately 1:30 a.m. on April 7, 1988, three residents driving around the streets of Ewing (population 520), Holt County, Nebraska, observed the defendant, carrying a backpack, walking down the town's main street. These residents saw a car with South Dakota license plates parked with a flat tire approximately 150 feet from the defendant. One of these residents called to the defendant to see if he needed any help. The defendant responded, "[N]o, leave me alone." These residents then drove around the block and observed the defendant run into an alley, where he hid behind a utility pole. They asked defendant what he was doing, and he responded that he was looking for a place to sleep.

These residents then notified a local police officer. This officer checked the registration of the vehicle the defendant was seen near and determined that the vehicle was owned by a South Dakota resident and had been stolen from the BG&S transmission shop in O'Neill, Nebraska.

At approximately 5 a.m., this officer received a telephone call from a Ewing resident and was told that someone was in her backyard. Upon his arrival, the officer found defendant sleeping, with his head on his duffel bag. A partially empty bottle of wine and two beer cans were nearby. The officer took defendant to the Ewing police station and informed him of his rights per *Miranda*.

There, the Ewing police officer saw defendant smoking a Salem brand cigarette. At a later time this officer took the cigarette butt from the ashtray and marked it as evidence.

The officer had one of the residents who had observed the defendant near the stolen vehicle identify the defendant at the police station. This witness stood outside the police station, looked through the door window, and after viewing the defendant seated approximately 10 feet away in a lighted room, identified defendant as the man the witness had seen near the vehicle earlier that morning. After this identification, defendant was arrested for suspicion of auto theft.

The officer and defendant then returned to the backyard where the defendant had been sleeping. There, the officer obtained the defendant's duffel bag, the cans of beer, the bottle of wine, and, at a later time, Salem brand cigarette butts near the area where the defendant had been sleeping.

Defendant and the officer then left for the county jail located at O'Neill. During the defendant's processing at the jail, the officers discovered a claw hammer, screwdriver, and toiletry items in the defendant's duffel bag, and a large amount of change.

The arresting officer then returned to Ewing, where he conducted a thorough search of the stolen vehicle. During this search, the arresting officer seized as evidence the contents of the vehicle's ashtray, which contained numerous gum wrappers and cigarette butts, at least one of which was a Salem brand.

Upon returning to the Ewing police station, the arresting officer was informed by the Holt County Sheriff's Department in O'Neill that during the night a burglary had occurred at the BG&S transmission shop in O'Neill. The arresting officer was also told that the BG&S moneybag was missing. Upon receiving this information, the Ewing police officer returned to the location of the stolen vehicle and conducted a thorough search. Approximately 18 feet from the front of the vehicle, the arresting officer found the keys to the vehicle, and on the roof of a nearby business he found a moneybag identified later as the one taken from the BG&S transmission shop.

During this same period of time a Holt County sheriff's officer in O'Neill determined that one of the BG&S doors had been entered with some type of prying device.

The sheriff's deputy then went back to the county jail, where the defendant's belongings were searched for a second time.

During this search the deputy found another sack of change in the defendant's belongings and $466 in paper currency in the defendant's eyeglass case. The currency was in similar denominations, and in a similar amount, to that stolen from the transmission shop. Defendant did not testify at the trial.

In his appeal defendant contends that the trial court erred in admitting into evidence the cigarette butts and the screwdriver, since they were found in a search incident to an unlawful arrest. We must first determine whether the defendant's arrest was unlawful.

When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect has committed a crime, the officer has probable cause to arrest without a warrant. See, *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988); *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). A valid search as incident to an arrest without a warrant necessarily depends on the legality of the arrest itself. *State v. Blakely, supra*.

At the time of defendant's arrest for suspicion of auto theft, the Ewing police officer was aware of the following: (1) The defendant had acted suspiciously when encountered by Ewing residents; (2) the vehicle the defendant had been seen near had a flat tire and had apparently been abandoned; (3) the vehicle had been stolen; and (4) defendant was found asleep just a block away from the stolen vehicle, trespassing on another person's property. Based on this information the officer had probable cause to arrest defendant without a warrant. The arrest was lawful.

Only after the defendant had been placed under arrest did the arresting officer search defendant's belongings. During this search the officer recovered a screwdriver, which was later admitted at trial as evidence that it was of the type of instrument used to pry open the BG&S transmission shop door. The defendant was under arrest at the time, and all items seized from his person and personal belongings were seized incident to the defendant's arrest. A search made without a warrant is valid if made incidental to a lawful arrest. *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981); *United States v. Garcia*, 785 F.2d

214 (8th Cir. 1986), *cert. denied, Barker v. United States*, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342; *State v. Agnew*, 184 Neb. 700, 171 N.W.2d 542 (1969), *cert. denied* 399 U.S. 912, 90 S. Ct. 2207, 26 L. Ed. 2d 567 (1970).

Insofar as defendant contends that items taken from the stolen vehicle should have been suppressed as evidence, defendant lacks standing to challenge the seizure of those items. *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *Alderman v. United States*, 394 U.S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969).

Defendant's argument concerning the seizure of items he discarded as trash at the Ewing police department is without merit. The defendant abandoned these items and sufficiently exposed them to the officer and the public to defeat his claim to fourth amendment protection. See, *California v. Greenwood,* 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988); *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

Defendant also contends that his constitutional rights were violated when he was not allowed representation by counsel during his showup identification at the Ewing police station. Until an information has been filed, a defendant has no constitutional right to have the assistance of counsel during a police showup. *State v. Smith*, 209 Neb. 86, 306 N.W.2d 181 (1981); *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).

The defendant also contends that his police station identification was suggestive and likely to have resulted in his misidentification. In determining whether a likelihood of misidentification exists, this court reviews the totality of the circumstances of each case. *State v. Hunt*, 212 Neb. 214, 322 N.W.2d 621 (1982). A showup identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law; the admission of evidence of a showup without more does not violate due process. *State v. Johnson*, 214 Neb. 869, 336 N.W.2d 581 (1983).

The defendant was observed by the party who identified him

on two different occasions, once on the Ewing main street, when the defendant was observed walking away from the stolen vehicle, and again in a nearby alley. Approximately 4 hours later the Ewing resident identified the defendant without displaying or suggesting any uncertainty in her identification. We find that the circumstances of the defendant's identification were not unduly suggestive or likely to have led to a mistaken identification.

In the defendant's final assignment of error, he argues that there was insufficient evidence to support his convictions. A person charged in a criminal case may be convicted on the basis of circumstantial evidence. *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). Defendant was first seen at an early morning hour near a stolen vehicle. In addition, money found on the defendant was similar in amount and denominations to money taken in the charged burglary.

In other evidence presented during the trial, a Nebraska State Patrol forensic serologist testified that she had analyzed the cigarette butts seized during the investigation. In her testimony, Reena Roy, Ph.D., stated that in the course of her analysis she checked the cigarette butts for amylase (an enzyme contained in saliva) and for blood group substances. From her examination of these cigarette butts, she determined that the saliva on the cigarette extinguished by the defendant in the Ewing police station was of the same blood group as the saliva on at least one of the cigarette butts extinguished in the stolen vehicle ashtray.

In determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the jury, and the verdict of the jury must be sustained if, taking a view most favorable to the State, there is sufficient evidence to support it. *State v. Swift*, 230 Neb. 373, 431 N.W.2d 643 (1988); *State v. Anderson*, 229 Neb. 427, 427 N.W.2d 764 (1988). The evidence, when viewed in light of these rules, was sufficient to justify the district court in submitting the case to the jury, and was also sufficient for the jury to have found the defendant

guilty of theft by unlawful taking and burglary.

There is no error in the court below, and the district court's decisions are affirmed.

AFFIRMED.